461 So.2d 1354 (1984)
John O'CALLAGHAN, Appellant,
v.
STATE of Florida, Appellee.
John O'CALLAGHAN, Petitioner,
v.
Louie L. WAINWRIGHT, Etc., Respondent.
Nos. 65353 to 65355.
Supreme Court of Florida.
December 13, 1984.
Rehearing Denied February 7, 1985.
David Lipman of Lipman & Weisberg, Miami, and Steven L. Winter, New York City, for appellant/petitioner.
Jim Smith, Atty. Gen., Richard G. Bartmon, Sarah B. Mayer and Marlyn J. Altman, Asst. Attys. Gen., West Palm Beach, for appellee/respondent.
PER CURIAM.
In this post-conviction relief proceeding, John O'Callaghan, who is under a sentence *1355 of death, seeks a stay of execution and (1) appeals from denial of his motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850; (2) petitions for habeas corpus relief, asserting ineffective assistance of appellate counsel; and (3) applies for leave to file a petition for writ of error coram nobis, asserting that a critical witness has recanted a material part of his testimony. This Court has jurisdiction, article V, section 3(b)(1), Florida Constitution. We granted a stay of execution to allow this Court an opportunity to fully address these claims for relief.
This Court previously affirmed appellant's conviction for first-degree murder and a sentence of death. See O'Callaghan v. State, 429 So.2d 691 (Fla. 1983).

Motion for 3.850 Relief
Appellant's 3.850 motion raises eleven claims for relief. All but three of these claims were raised or could have been raised in the appeal on the merits. As we have repeatedly stated, a 3.850 motion cannot be utilized for a second appeal to consider issues that either were raised or could have been raised in the initial appeal. Jones v. State, 446 So.2d 1059 (Fla. 1984); Demps v. State, 416 So.2d 808 (Fla. 1982); Christopher v. State, 416 So.2d 450 (Fla. 1982); Foster v. State, 400 So.2d 1 (Fla. 1981); Sullivan v. State, 372 So.2d 938 (Fla. 1979); Spenkelink v. State, 350 So.2d 85 (Fla.), cert. denied, 434 U.S. 960, 98 S.Ct. 492, 54 L.Ed.2d 320 (1977). The three remaining issues are (1) that the Florida capital sentencing scheme is imposed in an arbitrary and discriminatory manner on the basis of geography, economic status, and sex of the defendant, and the occupation and race of the victim; (2) that a critical material witness has recanted and changed a material portion of his testimony; and (3) that O'Callaghan was deprived of effective assistance of counsel at both the guilt and sentencing phases of his trial.
First, O'Callaghan's claim that death penalty imposition in Florida is arbitrary and discriminatory has been previously raised and disposed of by this Court in Adams v. State, 449 So.2d 819 (Fla. 1984), and Sullivan v. State, 441 So.2d 609 (Fla. 1983). See also Wainwright v. Adams, ___ U.S. ___, 104 S.Ct. 2183, 80 L.Ed.2d 809 (1984); Sullivan v. Wainwright, 721 F.2d 316 (11th Cir.1983). The second issue relating to the change of testimony by a material witness is not a matter to be resolved in a 3.850 proceeding and will be disposed of in this opinion with respect to O'Callaghan's application for leave to file a petition for writ of error coram nobis. The only claim that merits discussion relates to the allegations of ineffective assistance of counsel. The trial court denied O'Callaghan an evidentiary hearing on this issue and specifically found in its order denying relief that O'Callaghan did not sufficiently demonstrate that he received ineffective assistance of counsel under the standards set forth by the United States Supreme Court in its recent decision in Strickland v. Washington, ___ U.S. ___, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
The question that must first be resolved is whether the allegations made by O'Callaghan were sufficient to require an evidentiary hearing on the claim of ineffective assistance of counsel. The law is clear that under rule 3.850 procedure, a movant is entitled to an evidentiary hearing unless the motion or files and records in the case conclusively show that the movant is entitled to no relief. See Riley v. State, 433 So.2d 976 (Fla. 1983); Demps v. State, 416 So.2d 808 (Fla. 1982); LeDuc v. State, 415 So.2d 721 (Fla. 1982). O'Callaghan alleges, in part, that his counsel's motion for a psychiatric examination of O'Callaghan was granted, but that O'Callaghan's counsel never had the examination conducted; that O'Callaghan's counsel called no witness in mitigation or for any purpose at the sentencing hearing; that O'Callaghan's counsel never contacted O'Callaghan's parents prior to the trial; that if his parents had been contacted, his counsel would have discovered that O'Callaghan suffered a harsh and alienating childhood, serious physical and psychological abuse as a child, a serious drug problem as a teenager, and had a family history of mental illness; and *1356 that a mental health professional's affidavit asserts he exhibits likely evidence of brain damage and mental illness. We conclude that these allegations are sufficient to require an evidentiary hearing on the issue of ineffective assistance of counsel.

Motion for Leave to File a Petition for Writ of Error Coram Nobis
O'Callaghan asserts that his codefendant, Walter Tucker, a/k/a Beau Mark Tucker, signed an affidavit on May 22, 1984, in which he recanted part of his trial testimony and stated, in part:
1. The night of the crime that O'Callaghan received the death penalty for, I, Beau Tucker fired what I consider to be a fatal shot into Vick, the victim.
2. O'Callaghan had fired two shots in rapid succession, and I believed at the time, and still do, that O'Callaghan missed the victim.
3. After he fired those two shots that missed, he handed me the gun immediately and I fired one shot, which I considered at the time, and still do believe, was the shot that entered his head.
O'Callaghan and Tucker were tried together. Tucker was found guilty of second-degree murder, while O'Callaghan was found guilty of first-degree murder and the jury recommended the imposition of the death penalty. O'Callaghan argues that had these facts been known at the time of trial, he would not have been convicted of first-degree murder or sentenced to death. In rebuttal, the state argues that in order to merit coram nobis relief, this type of newly discovered evidence, if taken as true, must directly invalidate an essential element of the state's case. Further, the state argues, the new evidence must conclusively have prevented the entry of judgment. We agree with the state that under the conclusiveness test established by this Court in Hallman v. State, 371 So.2d 482, 485 (Fla. 1979), this change of testimony would not conclusively have prevented the entry of judgment in the instant case. We agree that the recantation would not have precluded O'Callaghan's conviction. Using the conclusiveness test, we must also agree that the presentation of that evidence would not change the sentence imposed on the defendant.

Petition for Writ of Habeas Corpus
We find O'Callaghan's petition for habeas corpus relief on the ground that he was provided ineffective assistance of counsel during his appeal to be without merit.

Conclusion
For the reasons expressed, we reverse the trial court's order denying relief under rule 3.850 on the ground of ineffective assistance of counsel, and we remand for a prompt evidentiary hearing on that question. We affirm the trial court's denial of relief under 3.850 on the other grounds asserted by O'Callaghan. The application for leave to file a petition for writ of error coram nobis and the petition for writ of habeas corpus are each denied.
It is so ordered.
BOYD, C.J., and ADKINS, ALDERMAN, McDONALD, EHRLICH and SHAW, JJ., concur.
OVERTON, J., concurs in part and dissents in part with an opinion.
OVERTON, Justice, concurring in part, dissenting in part.
I concur in all parts of the majority opinion except the holding that, in effect, denies an evidentiary hearing on the recanted testimony of the codefendant who was convicted of second-degree murder. I fully recognize and support the view that recanting witnesses must be looked upon by courts with utmost suspicion. See, e.g., Bell v. State, 90 So.2d 704 (Fla. 1956). Even given that principle of law, however, I find that where a death sentence has been imposed and a material witness has changed his testimony, the court should not be reluctant to at least provide an evidentiary hearing to ascertain the truth. I dissented in Hallman v. State, 371 So.2d 482, 486 (Fla. 1979), because I found the rigid *1357 application of the "conclusiveness test" overly harsh in death penalty cases, particularly when the "probability test" would be applied had the evidence been discovered in sufficient time to permit the filing of a motion for new trial. I would grant the motion for leave to file a petition for writ of error coram nobis in this case, to the extent of remanding the cause to a trial judge for a determination as to whether the witness was telling the truth at the trial, or in the affidavit. If the court found that the testimony in the affidavit is true, then the trial court would proceed to determine whether that evidence would affect the conviction or the sentence under the probability standard discussed in my dissent in Hallman. I adhere to my dissent in Hallman because I believe it provides a procedure that will serve to protect this state from executing an individual whose conviction was based in part on false testimony.